UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KRISTEN HART,

    Plaintiff,

v.                                                       Case No. 8:18-cv-2601-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI).[1] *See* 42 U.S.C. § 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) should have found that her digestive disorder and accompanying weight loss met or equaled medical listing 5.08. After considering Plaintiff's arguments, Defendant's response, and the administrative record, I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence. I affirm the ALJ's decision.

    *A. Background*

Plaintiff Kristen Hart was born on September 13, 1968, and was 49 years old at the time of the administrative hearing. Plaintiff has earned a GED and some community college credits. She lived with her ailing parents until they passed away; by the hearing date, Plaintiff had moved in with her adult son. Plaintiff has past work experience as an office clerk for a home builder, a medical biller and coder for a dentist, and a receptionist at a gym. Plaintiff alleges disability due to colitis, sciatica, and mental impairments.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

This is Plaintiff's second application for benefits. Initially, she applied for SSI and disability insurance benefits (DIB), alleging disability beginning February 15, 2008. The same ALJ assigned to the current appeal denied Plaintiff's first application on December 13, 2013 (the Appeals Council upheld this decision). Consequently, the parties concede that for the time period of February 15, 2008 (her first alleged onset date), through December 13, 2013 (the date of the ALJ's unfavorable decision), the ALJ's denial "became administratively final under the doctrine of *res judicata* through the latter date." (R. 22) Nonetheless, in Plaintiff's current application (her second), she requests SSI and DIB, this time alleging disability as of August 25, 2012.

Against this procedural backdrop, the ALJ dismissed Plaintiff's second DIB application, because Plaintiff's date of last insured was September 30, 2013, and the denial of her first claim was administratively final through December 13, 2013. What remained for the ALJ to determine in this case is whether Plaintiff was disabled, and therefore entitled to SSI, from December 14, 2015 (the date she filed her second application), through March 7, 2018 (the date of the ALJ's denial of her second application).

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "status-post remote cervical spine anterior cervical discectomy and fusion (ACDF); pre-existing lumbar spine disc bulge and protrusions with annular tear at L4-5 level and minor nerve root involvement, and mild to moderate stenosis; and combined mild major depression with anxiety and mood disorder." (R. 25) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled, despite these impairments, as she retains the residual functional capacity (RFC) to perform light work with some limitations:

> No more than occasional climbing, balancing, stooping, kneeling, crouching and crawling; occasional climbing ladders, but never climbing scaffolds, ropes or at open unprotected heights; must avoid extreme vibrations; reaching with upper

extremities is limited to frequent (between one-third and two-thirds of time during an eight-hour workday); must avoid operation of dangerous machinery; limited to understanding and carrying-out simple, routine, repetitive tasks (meaning tasks that will be learned from a short demonstration or doing the same task for up to 30 days, limited to making basic decision and adjusting to simple changes in the work setting); no more than frequent interaction with the general public, coworkers and supervisors.

(R. 27-28) The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work but could work as a housekeeper/cleaner, advertising materials distributor, and a produce sorter. (R. 32) The Appeals Council denied review. Plaintiff, having exhausted her administrative remedies, filed this action.

### B. *Standard of Review*

To be entitled to SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her

3

ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

 C. *Discussion*

  1. *Listing 5.08, weight loss due to any digestive disorder*

Plaintiff argues she meets the requirements of listing 5.08 and that the ALJ failed to address this. The Commissioner responds that the listing does not apply, because there is no corroborative medical evidence supported by clinical findings that Plaintiff suffered from a digestive disorder.

4

At step three, Plaintiff has the burden of establishing the existence of an impairment or combination of impairments that meets or equals the criteria of a medical listing in 20 C.F.R. pt. 404, Subpt. P, App. 1. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The purpose of the medical listings is to "streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). If a claimant establishes that she meets or equals a listing, no further proof of disability is required. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

A claimant must meet or equal *all* the requirements of a listing. *Sullivan v. Zebley*, 493 at 530-31. Mere diagnosis of a listed impairment is by itself not enough; the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes*, 936 F.2d at 1218. And if a claimant contends that an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment has such an equivalency. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

The medical listing Plaintiff focuses on in her appeal is listing 5.08. The ALJ did not address it specifically but found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (R. 26) The Eleventh Circuit has held that an ALJ's finding as to whether a claimant meets or equals a listing may be implied from the record. *Davenport v. Astrue*, 403 F. App'x 352, 354 (11th Cir. 2010). The key question before me is whether substantial evidence exists to support the ALJ's implied finding that Plaintiff does not meet the requirements of listing 5.08.

To meet the requirements of listing 5.08, a claimant must have "weight loss due to any digestive disorder despite continued treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 CFR Part 404, Subpart P, App. 1, § 5.08. The formula for calculating a person's BMI is: BMI = weight in pounds / (height in inches x height in inches) x 703. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 5.00(G)(2)(b). Digestive disorders "include gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition." The claimant's diagnosis must be supported by "appropriate medically acceptable imaging studies and reports of endoscopy, operations, and pathology, as appropriate to each listing, to document the severity and duration of your digestive disorder." *Id*. at § 5.00.

On the record before me, Plaintiff satisfies some of the requirements of listing 5.08. Plaintiff experienced significant weight loss. Plaintiff is five feet four inches tall. A person of Plaintiff's height has a BMI of 17.5 (the requirement for listing 5.08) if she weighs 102 pounds. On April 7, 2017, Plaintiff weighed 105 pounds; on May 5, 2017, she weighed 101 pounds; on June 2, 2017, she weighed 99 pounds; on July 3, 2017, she weighed 95 pounds; on August 25, 2017, she weighed 93 pounds; and on September 22, 2017, she weighed 96 pounds. (R. 864, 869, 874, 884, 889, 894) Based on this, there is substantial clinical evidence that Plaintiff's BMI met the requirements of listing 5.08 during the relevant period.

Where Plaintiff stumbles is trying to link her weight loss with a digestive disorder that satisfies listing 5.08. Put differently, there is scant clinical evidence Plaintiff suffers from a digestive disorder within the meaning of the listing. Plaintiff appears to alternately argue that she suffers from three impairments of her digestive system: acute ischemic colitis, ulcerative colitis, and constipation. Regarding acute ischemic colitis, she was diagnosed in June 2015, six months

prior to the start of the relevant time period, during an ER visit for excessive diarrhea, nausea, and vomiting. (R. 685-86)  The attending physician, Mukeshkumar Patel, M.D., suspected "diffuse colitis" after a CT of Plaintiff's abdomen and pelvis, but a colonoscopy refined the diagnosis to acute ischemic colitis. (R. 686)  Plaintiff was stabilized, prescribed baby aspirin, and directed to follow up with both her primary care doctor and gastrointestinal specialist Sreenivas Vangara, M.D. (R. 699)  After this initial diagnosis, there is no medical evidence that Plaintiff was treated again for any type of colitis during the relevant period.

Plaintiff testified she has ulcerative colitis, but – again – there is no record evidence that she was diagnosed with this condition, and Plaintiff does not point me to any.  Plaintiff testified that ulcerative colitis is her main problem and that she suffers from "very, very bad stomachache to where it's – it depends on the variation but again it's usually – I'm usually in the bathroom and – or on the bed, lying on the bed trying to relieve myself gas-wise." (R. 251)  She testified she lost 25 pounds "due to my issues with my stomach and my UC because I vomit a lot. . . . and then when I got on the scale and I was 88 I just got very, very scared, you know." (R. 255)  She continued: "I have that ulcer colitis and it irritates my bowels.  And there's blood sometimes in my stool and that's been noted at hospitals, and scary, and . . . I try to eat, you know, and when I'm hungry I can – I can eat, I just can't keep it." (R. 256)  She testified she saw a specialist at one point but did not return for follow-up visits, because "he couldn't even give me a diet or even indicate any kind of medicines that he would recommend due to what I was already on." (R. 252)

My best guess is that Plaintiff mistook her diagnosis during her testimony to be ulcerative colitis rather than acute ischemic colitis.  Although these conditions share symptoms, ulcerative colitis is considered an inflammatory bowel disease (IBD); it is a separate digestive disorder,

7

specifically mentioned in the listings. In any event, The ALJ addressed Plaintiff's complaints of ulcerative colitis and found it to be a non-severe impairment:

> The claimant states that she has significant nausea and stool inconsistency, and indicates that it has resulted in frequent emergency room visits and unbearable pain. However, a review of the record noted no emergency room visits, or any treatment whatsoever, for ulcerative colitis, and her abdomen was non-tender whatsoever, for ulcerative colitis, and her abdomen was non-tender with normally active bowel sounds on examination at the consultative evaluation. This evidence suggests that the claimant's ulcerative colitis does not cause more than a minimal effect on her ability to perform basic work activities and is thus non-severe.

(R. 26) Substantial evidence supports the ALJ's consideration of Plaintiff's ulcerative colitis. Although Plaintiff's pain management doctor prescribed Colace for Plaintiff's constipation, he did not diagnose a digestive disorder and did not document any concerns over her weight loss. Additionally, the record does not contain any GI exams during the relevant time period. At her hearing, Plaintiff confirmed the only medicine she takes for her stomach problems is Colace, prescribed by her pain medication doctors. On this record, substantial evidence supports the ALJ's implied finding that Plaintiff does not meet the requirements of listing 5.08.

### D. Conclusion

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on December 16, 2019.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE